IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| Gregory Byers, father of N.B., | ) | C/A No.: 4:10-1367-TLW-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | AMENDED REPORT AND RECOMMENDATION |
| Marlboro County School District, | ) | |
| Defendant. | ) | |

The father of a twelve-year old female (Plaintiff)[1] files this civil rights action pursuant to 42 U.S.C. § 1983 against the Marlboro County School District concerning the

---

[1] Federal courts have consistently rejected attempts at third-party lay representation." *Herrera-Venegas v. Sanchez-Rivera*, 681 F. 2d 41, 42 (1st Cir. 1982). Specifically, a non-attorney parent representing himself or herself in a federal court action is prohibited from representing his or her minor children. *See Cheung v. Youth Orchestra Foundation*, 906 F.2d 59, 61 (2d Cir. 1990); *Johns v. County of San Diego*, 114 F. 3d 874, 876 (9th Cir. 1997); *Meeker v. Kercher*, 782 F.2d 153 (10th Cir. 1986); *Deving v. Indian River County School Bd.*, 121 F. 3d 576, 582 (11th Cir. 1997); *see also Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 124-5 (2d Cir. 1998)[relying on the common-law rule against non-attorney parents representing their children *pro se* in civil suits]; and *Gallo v. USA*, 331 F. Supp. 2d 446 (E.D.Va.2004) (mother may not represent daughter *pro se* but must retain lawyer).

The prohibition of *pro se* parents representing minor children exists to protect the rights of minor children, who cannot represent themselves in court, because parents unskilled in the law are not likely to adequately protect a child's rights in pursuing litigation on the child's behalf. *See Brown v. Ortho Diagnostic Systems, Inc.*, 868 F. Supp. 168 (E.D. Va. 1994).

While 28 U.S.C. § 1654 allows individuals to "plead and conduct their own cases personally," the statute does not extend that right to represent other parties, including the individual's minor children. Federal Rule of Civil Procedure 17(c) allows an appropriate individual to sue on behalf of a minor, but does not authorize a non-attorney parent to act as a minor's lawyer in court. The purpose of not allowing *pro se* parents to represent minor children is to protect the rights of the children. Since this report recommends dismissal based on other grounds, it is not necessary to direct Plaintiff to retain counsel on behalf of his minor daughter, nor is it necessary to determine if Plaintiff has standing to bring this suit.

ten day suspension of his daughter after a school hearing was held on February 18, 2009. The minor was found guilty of engaging in inappropriate sexual activity with a high school student during a school event. Specifically, she was "[c]aught in a sexual act of involvement in the female faculty's restroom at Marlboro County High School on the night of 2-10-09 during a basketball game. [The minor] [w]as caught with her pants undone—the male student was caught running from the scene. A condom was found." (Disciplinary Referral, Entry #1-4).

According to the complaint, "[n]o accusers, witnesses or evidence was presented" at the hearing. (Compl. ¶ 4.) A request to see the school surveillance tape was denied. (*Id.*) In addition to the suspension, it was recommended that the minor participate in the "Crossroads" and "Trinity Behavior" programs. (*Id.*) Plaintiff alleges his daughter is innocent, and has submitted along with the complaint, a "document" from a medical doctor indicating the minor's hymen is intact. (Dr. Candela note, Entry #1-7.) An appeal of the decision was filed and was apparently denied. Plaintiff alleges his daughter had only one referral in the past for "defend[ing] herself." (Compl. ¶ 9.) Plaintiff also alleges that Defendant, and others not named in the caption of the complaint, "creat[ed] this accusation" and have taken his "twelve-year old daughter (sic) virginity away from her for life." (Compl. ¶ 11.) Plaintiff seeks compensatory and punitive damages for the "permanent damage" to his daughter's "character, reputation, [and] name." (Compl. at 4.) He also asks that the decision be reversed and expunged from his daughter's school records.

**I.    Standard of Review**

Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(e) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.[2]  Under established local procedure in this judicial district, the undersigned has conducted a careful review of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915.  This court is required to construe *pro se* complaints liberally.  Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978). A federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint the plaintiff's allegations are assumed to be true.  *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975).  However, even under this less-stringent standard, the complaint submitted in the above-captioned case is subject to summary dismissal.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

---

[2] This Amended Report and Recommendation replaces the Report & Recommendation previously docketed on June 24, 2010.

**II.     Discussion**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In this matter, although not stated directly, it appears Plaintiff is attempting to raise both substantive and procedural due process claims against the School District.

**A.     Substantive Due Process Claim**

Plaintiff asserts a substantive due process claim based upon the school officials' decision to suspend his daughter for a ten-day period. The Supreme Court has said that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Substantive due process is a means of "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). However, the scope of substantive due process is very limited. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998) ("in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.")

To satisfy this standard, Plaintiff must show that the government decision it challenges "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989). A school administration's decision to suspend a student will provide a basis for a substantive due process claim only in the very "rare case" when there is "no rational relationship between the punishment and the offense." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir.1989); *see also Bd. of Educ. v. McCluskey*, 458 U.S. 966, 970 (1982) (finding no due process violation where a school board's interpretation of its rules is reasonable). In *Wood v. Strickland*, 420 U.S. 308 (1975), the Supreme Court stated:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

420 U.S. at 326 (internal citations omitted); *see also Tun v. Whitticker*, 398 F.3d 899, 904 (7th Cir. 2005) (finding that a student's expulsion for "horsing around in the boys' locker room" was a "regrettable" "overreaction by the defendants, including an overly broad reading of the district's behavior code," but did not constitute a violation of the student's substantive due process rights); *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200-01 (10th Cir. 2003) ("Absent certain factors not present here, we will uphold a school's decision to suspend a student in the face of a substantive due process challenge if

the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges.").

In the case at hand, Plaintiff has not set forth allegations that the punishment of suspension lacks a rational relation to the offense. Nor has Plaintiff alleged any facts which tend to show that Defendant's decision was arbitrary, irrational, or motivated by bad faith. Thus, Plaintiff's substantive due process claim with regard to the ten-day suspension must fail.

### B. Procedural Due Process Claim

In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (*citing Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990)). Property interests are created by existing rules that stem from an independent source, such as state laws. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

The South Carolina Constitution, Art. XI, § 3, requires that "[t]he General Assembly shall provide for the maintenance and support of a system of free public schools open to all children of the State and shall establish, organize, and support other public institutions of learning as may be desirable." In addition, the South Carolina Supreme Court has held that the South Carolina Constitution's education clause requires the General Assembly to provide the opportunity for each child to receive a "minimally

adequate education." *Abbeville County School District v. State*, 515 S.E.2d 535, 540 (S.C. 1999).

Plaintiff's daughter was suspended from school for ten days, which could constitute a deprivation even though it was only for a relatively short period of time. *See Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) ("Appellees were excluded from school only temporarily, it is true, but the length and consequent severity of a deprivation, while another factor to weigh in determining the appropriate form of hearing, is not decisive of the basic right to a hearing of some kind. The Court's view has been that as long as a property deprivation is not *de minimis*, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause.") (internal quotations and citations omitted). Therefore, the question is whether Plaintiff's daughter was deprived of education without due process. *See Goss*, 419 U.S. at 574 (1975) ("The authority possessed by the State to prescribe and enforce standards of conduct in its schools, although concededly very broad, must be exercised consistently with constitutional safeguards. Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.")

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Supreme Court has stated that "[a]t the very minimum, . . . students facing suspension and the consequent

interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goss*, 419 U.S. at 579. Courts must weigh the various interests at issue in determining what level of process is required. *Id*. As the Supreme Court has stated:

> The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences. The Due Process Clause will not shield him from suspensions properly imposed, but it disserves both his interest and the interest of the State if his suspension is in fact unwarranted. The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process.
>
> The difficulty is that our schools are vast and complex. Some modicum of discipline and order is essential if the educational function is to be performed. Events calling for discipline are frequent occurrences and sometimes require immediate, effective action. Suspension is considered not only to be a necessary tool to maintain order but a valuable educational device. The prospect of imposing elaborate hearing requirements in every suspension case is viewed with great concern, and many school authorities may well prefer the untrammeled power to act unilaterally, unhampered by rules about notice and hearing. But it would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his dereliction and to let him tell his side of the story in order to make sure that an injustice is not done. "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights.... Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it."

*Goss*, 419 U.S. at 579–80 (citations omitted).

The Supreme Court in *Goss v. Lopez* set forth minimal due process requirements as it relates to suspensions of ten days or less. Specifically, the Court held that "student[s] facing temporary suspension" have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a "suspension 'of 10 days or less'", that the student "'be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story'" but "[a] formal hearing is unnecessary" for suspensions of ten days or less. *Rosenfeld v. Ketter*, 820 F.2d 38, 40 (2d Cir. 1987) (citing *Goss*, 419 U.S. at 581).

In the instant matter, Plaintiff's daughter was given written notice of the charges against her, an explanation of the evidence against her in the written charge, and an opportunity to deny the allegation and explain her side. *Goss* is satisfied and any procedural due process claim arising from the ten-day suspension must fail. *See also McDonald ex rel. McDonald v. Sweetman*, 2004 WL 717166, at 4 (D.Conn. Mar. 24, 2004) (unpublished) ("While [plaintiff] may rightly feel that she was tried, convicted, and sentenced by school officials who had already made up their minds, the fact remains that before she was suspended, [plaintiff] was given oral notice of the charges against her, an opportunity to prevent her version of the facts, and an explanation, however feeble, of the evidence against her. That is all the process that is required under the Constitution.").

### C. Eleventh Amendment sovereign immunity

Finally, the undersigned notes that the sole defendant in this matter, the Marlboro County School District, is immune from a suit for damages in a Section 1983 action because it enjoys Eleventh Amendment sovereign immunity. *See Smith v. Aiken County Public School District*, C/A No. 1:03-3691-HFF (D.S.C. 2003) (the relationship between the defendant school districts and the state is so close and the laws of this state are such as to render the defendant school districts as arms of the state for purposes of Eleventh Amendment sovereign immunity). Thus, even if Plaintiff could establish a federal cause of action, the defendant would be entitled to summary dismissal in any event. The Eleventh Amendment applies both to diversity jurisdiction and to federal question jurisdiction. *LaFavre v. Kansas ex re. Stovall*, 6 Fed. Appx. 799, 2001 WL 322480 (10th Cir. 2001) (unpublished).

### III. Recommendation

Accordingly, it is recommended that the District Court dismiss the complaint in the above-captioned case *without prejudice* and without issuance and service of process. It is further recommended that this Court decline to hear any state law issues presented.

IT IS SO RECOMMENDED.

*/s/ Shiva V. Hodges*

July 16, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**